**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**HELENA AGRI-ENTERPRISES, LLC**                                                        **PLAINTIFF**

**v.**                                     **No. 4:24-cv-00544-LPR**

**JAMIE LEWIS d/b/a
JAMIE LEWIS FARMS
and RANDIE LEWIS**                                                              **DEFENDANTS**

<u>**ORDER**</u>

Pending before the Court are Plaintiff Helena Agri-Enterprises, LLC's Motion for Default Judgment and Motion for Costs.[1]  For the reasons explained below, Plaintiff's Motions are hereby GRANTED.

**I.        BACKGROUND**

According to Plaintiff's Complaint, on or about March 31, 2021, Defendant Jamie Lewis, doing business as a sole proprietorship under the name Jamie Lewis Farms, submitted an application to Plaintiff for a commercial credit account.[2]  In connection with the credit application, Randie Lewis executed a Guaranty Agreement with Helena in which she guaranteed the "prompt payment and performance of all Guaranteed Debt," including any debt on the commercial credit account for which Jamie Lewis was applying.[3]

Plaintiff approved the application for credit and agreed to extend credit pursuant to the terms in a Credit Agreement.[4]  During the 2023 growing season, the Defendants purchased agricultural inputs on credit from Plaintiff pursuant to the terms of the Credit Agreement.[5]  The

---

[1] Mot. for Default J. (Doc. 11); Mot. for Costs (Doc. 13).

[2] Compl. (Doc. 1) ¶ 6.

[3] *Id.* ¶ 7.

[4] *Id.* ¶ 6.

[5] *Id.* ¶ 9.

unpaid purchases amounted to $89,034.08.[6]  Under the terms of the Credit Agreement, if there was an unpaid principal balance on the credit account, the account would accrue finance charges at a rate of 1.4% per month.[7]  The Defendants failed to make payments, and finance charges accrued on the open credit account.[8]  By March 31, 2024, the total balance of principal and finance charges was $100,320.70.[9]

On June 26, 2024, Plaintiff filed a Complaint in this Court seeking judgment in the amount of $100,320.70, plus additional pre-judgment finance charges from March 31, 2024, according to the contract rate, post-judgment interest at the highest rate allowed by law, costs, and attorneys' fees.[10]  The Defendants were duly served with Summonses and copies of the Complaint on July 10, 2024.[11]  The Defendants have not filed answers or other responsive pleadings herein.  On August 5, 2024, the Clerk entered Clerk's Defaults against each of the Defendants.[12]

## II.    LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure contemplates a two-step process for the entry of default judgments.[13]  "[F]irst, pursuant to [Rule] 55(a), the party seeking a default judgment must have the [Clerk of Court] enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend."[14]  "[S]econd, pursuant to [Rule] 55(b), the moving party may seek entry of judgment on the default under either subdivision

---

[6] *Id.*

[7] *Id.*

[8] *Id.* ¶ 10.

[9] *Id.* ¶ 9.

[10] *Id.* p. 4.

[11] *See* Affidavits of Service (Docs. 5 & 6).

[12] *See* Entries of Default (Doc. 9 & 10).

[13] *See Fraserside IP L.L.C. v. Youngtek Sols. Ltd.*, 796 F. Supp. 2d 946, 951 (N.D. Iowa July 12, 2011).

[14] *Id.*

(b)(1) or (b)(2) of the [R]ule."[15]   Entry of default under Rule 55(a) must precede a grant of default judgment under Rule 55(b).[16]

Once a defendant is in default, the factual allegations of the complaint, "except those relating to the amount of damages, will be taken as true."[17]   When moving for default judgment, a plaintiff must prove entitlement to the amount of monetary damages requested, and "the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain."[18]   "[E]ntry of a default judgment . . . [is] committed to the sound discretion of the district court."[19]   "Default judgments, however, are not favored by the law."[20]

## III.   DISCUSSION

In this case, the Clerk's entry of default was appropriate.  The Defendants failed to file answers or other responsive pleadings within twenty-one days of service of the Summonses and Complaint upon them.  Plaintiff filed the instant Motion for Default Judgment with the necessary supporting documentation—including an affidavit from Plaintiff's credit manager attesting to the principal amount and finance charges, and billing statements reflecting the attorneys' fees—and provided notice to Defendants (even though Rule 55 does not require Plaintiff to provide such notice).[21]

Taking Plaintiff's allegations in the Complaint as true, except for those allegations as to the amount of damages, the Court concludes that the unchallenged facts constitute a legitimate

---

[15] *Id.*

[16] *See id.*

[17] *Erickson v. Sawyer*, 650 F. Supp. 3d 758, 762 (D. Minn. Jan. 12, 2023) (quotation marks and citation omitted).

[18] *Lifted Rsch. Grp., Inc. v. Behdad, Inc.*, 591 F. Supp. 2d 3, 6 (D.D.C. Dec. 10, 2008) (quotation marks and citation omitted).

[19] *United States v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993).

[20] *Id.*

[21] *See generally* Mot. for Default J. (Doc. 11).

cause of action for breach of contract, that Defendants have breached the Credit Agreement and Guaranty Agreement, and that Plaintiff is entitled to default judgment against Defendants. The Credit Agreement stated that payment for each purchase was due thirty days after the date of the first statement reflecting such purchase.[22] If the Defendants failed to pay for a purchase within thirty days of the first monthly statement reflecting the purchase, "the account [could] be considered by [Plaintiff], at its option, to be in default, and [Plaintiff could] elect to declare any amounts outstanding immediately due and payable."[23] Similarly, in the Guaranty Agreement signed by Randie Lewis, she guaranteed the "prompt payment and performance of all Guaranteed Debt when due or declared due, and at all times thereafter."[24] Under these terms, the Defendants defaulted by failing to make full payment of the debt on the credit account. To date, there are over a dozen unpaid invoices that have been overdue for over a year.[25] Therefore, the Defendants are in breach of contract.

With respect to damages, a hearing is not necessary. The amounts due are ascertainable from definite figures, facts, and evidence provided by Plaintiff. Documentation and evidence provided by Plaintiff, including an affidavit from its credit manager swearing that the list of open invoices and finance charges attached to the Complaint is a "true and correct listing," demonstrate Plaintiff's entitlement to the amounts sought.[26] Plaintiff provided documentation showing that, through March 31, 2024, the balance of principal was $89,034.08 and the balance of finance charges was $11,286.62, for a total amount due of $100,320.70.[27] Plaintiff also

---

[22] Compl. (Doc. 1) ¶ 9.

[23] *Id.* p. 6.

[24] *Id.* ¶ 7.

[25] *Id.* p. 9.

[26] Mot. for Default J. (Doc. 11) at 6.

[27] *Id.* at 5.

provided documentation showing that there was a 1.4% monthly contract rate for pre-judgment finance charges.[28]  Applying the 1.4% contract rate to the principal balance of $89,034.08 from March 31, 2024, to the date of judgment, the Court awards additional pre-judgment finance charges of $13,711.28, for a total award of $114,031.98.

Regarding post-judgment interest, Eight Circuit precedent is clear that the federal post-judgment interest statute applies.[29]  The federal statute calls for post-judgment interest at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.[30]  The applicable post-judgment interest rate in this case shall be 4.168% per annum.[31]  "Interest shall be computed daily to the date of payment" and "compounded annually."[32]

Regarding attorneys' fees, Plaintiff has requested $2,563.00.[33]  Plaintiff has provided documentation of its legal expenses and the time spent by counsel for Plaintiff.[34]  The Court concludes that the activities undertaken, hours billed, and hourly rates are reasonable, and therefore GRANTS the request for attorneys' fees in the amount of $2,563.00.  Regarding the Bill of Costs, the Court GRANTS Plaintiff's request to tax as costs the filing fee of $405.00 charged by this Court for filing the Complaint and issuing Summonses in this action.[35]

---

[28] *Id.* at 5–6.

[29] *See Maddox v. Am. Airlines, Inc.*, 298 F.3d 694, 699-700 (8th Cir. 2002).

[30] 28 U.S.C. § 1961(a).

[31] *See* BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, https://www.federalreserve.gov/releases/h15/. (Providing historical data from which the Court calculated the rate of interest).

[32] 28 U.S.C. § 1961(b).

[33] Mot. for Default J. (Doc. 11) at 3.

[34] *See id.* at 8–17.

[35] Mot. for Costs (Doc. 13).  *See* Fed. R. Civ. P. 54(d)(1).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment and Motion for Costs are hereby GRANTED.[36]   Plaintiff is hereby awarded a Default Judgment against the Defendants, jointly and severally, in the principal amount of $89,034.08, together with pre-judgment finance charges of $24,997.90, post-judgment interest at the annual rate provided above, attorneys' fees in the amount of $2,563.00, and costs in the amount of $405.00.

IT IS SO ORDERED this 27th day of February 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[36] Mot. for Default J. (Doc. 11); Mot. for Costs (Doc. 13).